IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW GANT,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

      Defendant.

Civ. No. 6:14-cv-01219-MC

OPINION AND ORDER

**MCSHANE, Judge**:

      Plaintiff Andrew Gant brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income payments (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      The issues before this Court are whether the Administrative Law Judge (ALJ) erred in: (1) evaluating Plaintiff's credibility; (2) determining Plaintiff's residual functional capacity (RFC); and (3) failing to elicit vocational expert (VE) testimony explaining conflict between the RFC and the Dictionary of Occupational Titles (DOT). Because the ALJ properly evaluated Plaintiff's credibility, properly determined Plaintiff's RFC, and properly relied upon VE testimony, the Commissioner's decision is AFFIRMED.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on March 28, 2012, alleging disability since February 14, 1994. Tr. 33, 109–17. This claim was denied initially and upon reconsideration. Tr. 33, 72–74. Plaintiff timely requested a hearing before an ALJ, and appeared before the Honorable MaryKay Rauenzahn on January 14, 2013. Tr. 5–26. ALJ Rauenzahn denied Plaintiff's claim by written decision dated February 13, 2013. Tr. 22–42. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3, 27. Plaintiff now seeks judicial review.

Plaintiff, born on August 30, 1993, tr. 40, graduated from high school with a modified diploma and has no relative job experience, tr. 11, 41. Further, he has limited transportation options because he does not have a driver's license. Tr. 10–11. At the age of five months, Plaintiff was diagnosed with hepatoblastoma, a rare form of childhood liver cancer, tr. 50, and, as a result, he received benefits from 1994 to 2002, tr. 8. Plaintiff alleges disability due to the longstanding effects of his childhood chemotherapy: balance problems; bilateral sensorineural hearing loss; and difficulty comprehending written instructions. Tr. 12–23, 38. Plaintiff was nineteen years old at the time of his administrative hearing. Tr. 10, 38.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

2 – OPINION AND ORDER

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, Plaintiff argues that the ALJ erred in: (1) evaluating Plaintiff's credibility; (2) determining Plaintiff's RFC; and (3) failing to elicit VE testimony explaining conflict between the RFC and the DOT.

## I. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly rejected his testimony. Pl.'s Br. 2, ECF No. 18. In response, Defendant argues that the ALJ's findings are supported by substantial evidence, including objective medical evidence and Plaintiff's hearing testimony. Def.'s Br. 10–15, ECF No. 19.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this] testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms."

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[1] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found Plaintiff not credible to the extent that his statements were inconsistent with the RFC. Tr. 38. In making this determination, the ALJ relied on three bases, including: (1) Plaintiff's failure to complete recommended follow-up treatment; (2) Plaintiff's failure to pursue vocational rehabilitation services; and (3) Plaintiff's activities of daily living. *See* Pl.'s Br. 16–20, ECF No. 18.

First, as to the failure to complete follow-up treatment, the ALJ found that:

> The claimant's allegations are not fully credible because the record reveals the claimant failed to follow-up on recommendations made by medical providers. In 2010, Dr. Doucette recommended the claimant undergo vestibular rehabilitation. However, he did not pursue the recommended treatment. Of note, a lack of resources to pursue such treatment is not an issue, as the claimant testified having health insurance. The claimant's lack of treatment suggests his symptoms are not as serious as alleged.

Tr. 39 (citations omitted). Plaintiff argues that this finding is erroneous because he is unable to travel to the recommended treatment center in Springfield, Oregon, which is more than forty miles from Plaintiff's home. Pl.'s Br. 17, ECF No. 18. Plaintiff relies on a treatment note by a treating physician suggesting that rehabilitation in Springfield, Oregon, "wasn't feasible." Pl.'s

---

[1] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

4 – OPINION AND ORDER

Br. 17, ECF No. 18 (quoting tr. 381). That note, however, reflects Plaintiff's own subjective reports, not an independent objective assessment. In any event, Plaintiff has demonstrated an ability to use public transportation. *See* tr. 181 ("[H]e relies on bike, bus, or family for [his] transportation needs."). An ALJ may reject a claimant's testimony regarding the severity of his symptoms based on the claimant's failure to seek medical attention. *See Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996). Therefore, the ALJ's consideration of Plaintiff's failure to participate in follow-up treatment was proper.

Second, as to Plaintiff's withdrawal from rehabilitation services, the ALJ found that "[t]he record shows . . . that services were discontinued no[t] because it was determined that claimant could not or should not work, but because 'he and his father feel that he should not pursue employment at this time.'" Tr. 39–40 (quoting tr. 163). Plaintiff argues that he chose to discontinue vocational rehabilitation services because the vocational rehabilitation services team was concerned that he would injure himself on the work-site due to an unexplained fall. Pl.'s Br. 18, ECF No. 18 (quoting tr. 163). Nonetheless, there is no evidence in the record that Plaintiff attempted to work but, due to his unexplained falls, was forced to stop. As a result, the ALJ properly considered Plaintiff's lack of motivation in assessing Plaintiff's credibility. *See Thomas*, 278 F.3d at 959 (concluding that an ALJ properly considered a claimant's propensity to work in evaluating that claimant's subjective testimony).

Third, as to Plaintiffs daily activities, the ALJ found that Plaintiff's activities were inconsistent with his alleged degree of impairment. Tr. 40. The ALJ explained:

> [T]he claimant's daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He reported caring for his personal needs. He testified to performing household chores (e.g., putting dishes away, making bed, doing laundry). He said he usually prepared dinner. He testified that his hobbies included

5 – OPINION AND ORDER

>   playing video games and reading. He regularly went to church on Sundays and volunteered at an animal shelter for two hours every other week. He testified his duties at the shelter included feeding and caring for the animals, and cleaning cages. Of note, he testified the only reason why he did not volunteer at the animal shelter full-time was that he did not have daily transportation to and from the facility.

Tr. 40. Plaintiff challenges this assessment, albeit indirectly, on two bases: (1) the ALJ improperly evaluated Plaintiff's testimony regarding the frequency of his falls; and (2) the ALJ misinterpreted Plaintiff's statements relating to his ability to work at an animal shelter. *See* Pl.'s Br. 19–20, ECF No. 18. Neither challenge is supported by the record.

Plaintiff argues that the ALJ improperly discredited his hearing testimony that he falls between two and three time each day. *See* Pl.'s Br. 19–20, ECF No. 18; *see also* tr. 19. This testimony, however, conflicted with Plaintiff's prior reporting to treatment providers. *See* tr. 250 (April 2010, one to two times per week); tr. 183 (July 2010, ten times per year); tr. 193 (September 2010, seven times per year); tr. 333 (October 2012, seven times per year); tr. 338 (December 2012, four times per month); tr. 19 (January 2013, two to three times per day). An ALJ may consider such inconsistent statements in evaluating a claimant's credibility. *See Smolen*, 80 F.3d at 1284.

Plaintiff also argues that the ALJ misinterpreted his hearing testimony. That testimony provides, in relevant part:

>   [ALJ] All right. Mr. Gant, why do you think you couldn't work at the animal shelter all the time?
>
>   [Plaintiff] Because I have no transportation on getting there.
>
>   [ALJ] Okay. If someone would – could pick you up and take you though, could you work with the animals every day?
>
>   [Plaintiff] Yeah.

6 – OPINION AND ORDER

Tr. 12. Plaintiff contends that when the ALJ asked if he could work "all the time," he presumed that the ALJ meant two hours each day, the length of time he currently volunteers every other week. *See* Pl.'s Br. 19–20, ECF No. 18. Plaintiff's subjective interpretation of his response does not preclude an interpretation that is otherwise rationale. *See Andrews*, 53 F.3d at 1039–40. Therefore, the ALJ did not err in his interpretation of Plaintiff's testimony.

In sum, the ALJ properly considered Plaintiff's failure to pursue follow-up treatment, withdrawal from rehabilitation services, and daily activities, and, therefore, properly discredited Plaintiff's statements to the extent they were inconsistent with the RFC.

## II. Plaintiff's RFC

Plaintiff argues that the ALJ's RFC findings do not account for Plaintiff's unexplained falls. Pl.'s Br. 5–9, ECF No. 18. That limitation, however, is incorporated into the RFC. For example, the ALJ determined that Plaintiff "should not stand or walk more than 1-hour in a[n] 8-hour workday [and] should not stand in one place unless for very short periods with adequate support." Tr. 37. Because Plaintiff's unexplained falls and other limitations are accounted for in the RFC, this Court will not disrupt the ALJ's findings.[2]

Plaintiff also argues that he is unemployable because of prospective employer concern with the liability associated with his unexplained falls. *See* Pl.'s Br. 9–10, ECF No. 18 (citing tr. 25). That is not the inquiry before this Court. Rather, this Court must determine whether the ALJ erred in evaluating Plaintiff's ability to physically and mentally perform work regardless of

---

[2] Plaintiff also notes that the hypothetical presented to the VE during the hearing was more restrictive than the ALJ's written RFC. The only difference between the hypothetical, tr. 23–24, and the written RFC, tr. 37, is that during the hearing the VE specified that the one hour of standing or walking "would be the time the individual would use to get to and from the workstation, to and from the bathroom, or to [go] to breaks," tr. 23. Such a discrepancy is not substantial as it has no bearing on the resulting limitation. Therefore, to the extent that a discrepancy exists, such a discrepancy is harmless.

7 – OPINION AND ORDER

whether Plaintiff would be hired if he applied for work. *See* 42 U.S.C. § 423(d)(2)(A). Therefore, the ALJ did not err in disregarding prospective employer concerns about liability.

### III. Conflict between the VE Testimony and DOT Position Descriptions

Plaintiff contends that the ALJ failed to elicit VE testimony explaining conflict between the RFC articulated by the ALJ and the DOT descriptions associated with positions identified by the VE. During the administrative hearing, the VE identified three positions that Plaintiff could perform under the RFC, including: inserter of paper goods, DOT § 794.687-058; hand banding, DOT § 920.687-026;[3] and sorter in photo finishing, DOT § 976.687-018. Because the VE did not discuss whether the photo finishing position had a sitting option,[4] this Court's inquiry is limited to two positions: inserter of paper goods and hand bander.

Plaintiff argues that he is unable to perform either position because both are described as "light work," which is defined in the DOT as requiring six hours of standing each day. *See* Pl.'s Br. 13–14, ECF No. 18. Plaintiff's argument mischaracterizes the DOT's definition of light work. The DOT recognizes *three* distinct categories of light work, including a second category that "requires sitting most of the time" and "pushing and/or pulling of arm or leg controls." DOT App. C, 1991 WL 688792 (1991). Plaintiff testified that he does not experience balance problems while sitting, and that, while sitting, he is able to perform tasks using his hands. Tr. 13. Therefore, according to Plaintiff's own testimony, he can perform work that falls within the DOT's second categorical description of light work.

---

[3] During the administrative hearing, the VE incorrectly identified the hand banding position as DOT § 902.687-026, instead of DOT § 920.687-026. Plaintiff argues that this error requires remand under *Davis v. Astrue*, No. CV 10-742-SI, 2012 WL 10512, at *1 (D. Or. Jan. 3, 2012). This Court is not persuaded. Unlike in *Davis*, the VE correctly identified the position by its proper title.

[4] During the administrative hearing, the VE incorrectly identified the sorter in photo finishing position as sedentary work, instead of light work as defined in the DOT. *See* DOT § 976.687-018. Because the VE did not address whether a sitting option is available in this position, this Court declines to consider the number of positions available for this occupation.

8 – OPINION AND ORDER

Plaintiff also argues that there is an unexplained conflict between the ALJ's RFC and the DOT descriptions for the inserter of paper goods and hand bander positions. Pl.'s Br. 15, ECF No. 18. If such a conflict is apparent, then the ALJ must elicit "a reasonable explanation for the conflict" from the VE. SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434–35 (9th Cir. 1995). As discussed above, there is not a conflict between the RFC and "light work" as defined in the DOT. Nor is there a conflict between the RFC and the DOT descriptions. Those descriptions do not explicitly state whether sitting or standing is required. To the extent that conflict can be inferred, the VE explained that both positions included sitting options. *See* tr. 24.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this ___4___ day of November, 2015.

                                          **Michael J. McShane**
                                          **United States District Judge**